UNITED STATES DISRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MOHAMED ELSALMI, on behalf of himself  )
and others similarly situated,  )
    )    Case No.: 25-4182
    Plaintiff,  )
    v.  )
    )
EXPRESS SCRIPTS HOLDING COMPANY,  )
CIGNA CORPORATION, GALAXY SYSTEMS  )
INC., GALAXE HEALTHCARE SOLUTIONS,  )
INC., and NAMTAL INTERNATIONAL, INC.,  )
    )
    Defendants.  )

---------------------------------------------------------------x

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Plaintiff Mohamed ElSalmi, by and through his undersigned counsel, brings this action individually and on behalf of all others similarly situated against Defendants Express Scripts Holding Company, Cigna Corporation, Galaxy Systems Inc., GalaxE Healthcare Solutions, Inc., and Namtal International, Inc., for misclassification as an independent contractor under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), failure to pay overtime wages under the FLSA and NYLL, retaliation under the FLSA § 215(a)(3) and the New York Labor Law, §§ 215(a) and 740, and failure to pay timely wages under the New York Labor Law, § 191, and against Defendants Express Scripts Holding Company and Cigna Corporation for denial of ERISA benefits and unjust enrichment.

2.    In October 2020, Plaintiff commenced work in Brooklyn, New York, as a data base administrator for Defendants Express Scripts Holding Company and/or Cigna Corporation ("Express Scripts/Cigna"). The position was titled "PostgreSQL Database Administrator (DBA)" by Express Scripts/Cigna. Plaintiff was misclassified as an independent contractor while

functioning as an employee. He did not receive the pay and benefits that DBA employees performing his same position at Express Scripts/Cigna received.

3.      Indeed, the position of DBA at Express Scripts/Cigna is non-exempt, and DBA employees receive overtime wages at time and a half for all hours worked in excess of 40 hours per week.

4.      Plaintiff complained multiple times to Defendants that he was misclassified and should be an employee of Express Scripts/Cigna, with overtime pay and benefits. Plaintiff also filed a misclassification complaint with the Department of Labor. Shortly after making his internal complaints and filing his Department of Labor complaint, Plaintiff was terminated by Defendants.

## THE PARTIES

5.      Plaintiff Mohamed ElSalmi is a 30 year old man who resides in Brooklyn, New York.

6.      Defendant Express Scripts Holding Company ("Express Scripts") is a pharmacy benefits manager located at 100 Parsons Pond Road, Franklin Lakes, New Jersey. In December 2018, Express Scripts became a direct subsidiary of Defendant Cigna Corporation.

7.      Defendant Cigna Corporation ("Cigna") is a healthcare company with its headquarters located at 900 Cottage Grove Road, Bloomfield, Connecticut. In December 2018, Cigna acquired Express Scripts. Defendant Cigna and Defendant Express Scripts are referred to herein collectively as "Express Scripts/Cigna."

8.      Defendant Galaxy Systems Inc. ("Galaxy") provides information technology ("IT") services and is located at 2 Executive Drive, Suite 430, Somerset, New Jersey, 08873.

9.     Defendant GalaxE Healthcare Solutions, Inc. ("GalaxE"), is an IT and business solutions provider located at 270 Davidson Avenue, Somerset, New Jersey 08873.  GalaxE is now part of Edava, a company based in the United Kingdom.

10.     Defendant Namtal International Inc. ("Namtal"), is a New York domestic business corporation with its headquarters located at 312 189th Terrace, Sunny Isles, North Miami Beach, Florida 33160.  Namtal provides IT consulting support.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Plaintiff's FSLA claims pursuant to 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331.

12.     This Cour has jurisdiction over Plaintiff's ERISA claims pursuant to 29 U.S.C. § 1132(e).

13.     This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in New York.

15.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff resides in this district, and Defendants regularly conduct business in this district.

16.     Venue also is proper pursuant to 29 U.S.C. § 1132(e), because the breach took place in this district and Defendant Express Scripts/Cigna can be found in this district.

## STATEMENT OF FACTS

17.     On September 1, 2020, Plaintiff entered into an agreement with Galaxy Systems, Inc. ("Galaxy") (the "Agreement").

18.     Pursuant to the Agreement, Plaintiff was to provide computer related services as a "Consultant Employee" for GalaxE.Healthcare Solutions, Inc. ("GalaxE") / Express Scripts Holding Company.

19.     The Agreement further provided that Galaxy and Namtal had entered into a Master Agreement dated June 1, 2011 (the "Master Agreement"), pursuant to which Namtal is to provide Galaxy with qualified technical personnel to perform computer-related services to Galaxy and/or clients of Galaxy.

20.     The Agreement stated that Galaxy and Namtal had identified Plaintiff as an "appropriate individual to perform services" to Galaxy and/or GalaxE.Healthcare Solutions, Inc. / Express Scripts Holding Company.

21.     In or around October 2020, Plaintiff commenced work as a data administrator, or DBA, for Express Scripts/Cigna.  Although his contract with Galaxy stated he was to providing computer-related services as a "Consultant Employee," Express Scripts/Cigna classified Plaintiff as an independent contractor.  Plaintiff earned a flat rate of $55 per hour for all hours worked and was not provided with any employment benefits such as health care and paid time off.   Plaintiff did not receive overtime wages at time and a half for the hours he worked in excess of 40 hours per week.

22.     Plaintiff recorded approximately 352.5 overtime hours for which he was paid only his flat rate of $55 per hour while working as a DBA for Express Scripts/Cigna.

4

23.     At all times relevant, Plaintiff worked remotely for Express Scripts/Cigna from his home in Brooklyn, New York.

24.     Often, Plaintiff was not paid semi-monthly for his work. Sometimes it would take up to two months following the performance of his work for Plaintiff to receive payment for his earned hourly wages.

25.     Plaintiff was misclassified by Express Scripts/ Cigna as an independent contractor. Indeed, Express Scripts/ Cigna treated Plaintiff as an employee in terms of the work assignments and schedules, training requirements, and work conditions.  But Plaintiff did not receive the pay and benefits commensurate with employment.

26.     Express Scripts/Cigna controlled and supervised Plaintiff's work.  Plaintiff would receive his assignments from his supervisor at Express Scripts/Cigna and would be required to work on a specific project for a set period of time.

27.     Express Scripts/Cigna set Plaintiff's work hours as 8:30 a.m. to 5:30 p.m.  During these hours, Plaintiff worked under the regular direction of, and took assignments from, his supervisors.  Plaintiff was informed of the sequence of his work by his supervisors at Express Scripts/Cigna, who prioritized certain projects.

28.     Plaintiff worked full-time on Express Scripts/Cigna's "OnePA Non-Delegated" team, fully integrated into their workforce. He was under Express Scripts'/Cigna's direct supervision on a daily basis.

29.     Each day began with two stand-up meetings, or a morning sync, where Plaintiff provided status updates to his Express Scripts/Cigna managers:  Naga Vikas Sirigudi (Team Lead), Malla Reddy Adaboina (Director), and Gary Bischoff.

5

30.     Plaintiff received tasks and assignments from Express Scripts/Cigna's management – primarily Naga Vikas Sirigudi (Team Lead) and Malla Reddy (Director) – and collaborated with other Cigna employees as a regular team member.

31.      Express Scripts/Cigna management often required Plaintiff to perform work after his schedule hours and long into the night in order to support code deployments and address on-call issues.  Notably, Plaintiff was the sole DBA handling after-hours and software release support. Express Scripts/Cigna frequently required him to work from midnight until 4:00 a.m. to deploy database changes.  Plaintiff was paid his flat hourly wage of $55 per hour for all hours worked in excess of 40 hours per week (*i.e.,* approximately 352.5 overtime hours in total).  He did not receive overtime pay.

32.     Express Scripts/Cigna required Plaintiff to complete 37 hours of training courses. Express Scripts/Cigna informed Plaintiff that if the required training courses were not completed, then Plaintiff would not receive his pay.

33.     Express Scripts/Cigna dictated and provided Plaintiff with all the requisite tools and equipment for his job, including computers and associated hardware.

34.     Express Scripts/Cigna had the right to, and ultimately did, terminate Plaintiff.

35.     The nature of Plaintiff's work as a software developer was not distinct from other IT professionals employed by Express Scripts/Cigna.  Plaintiff's peers who were employed by Express Scripts/Cigna either shared his IT designation or were engaged in closely aligned IT capacities, and Express Scripts/Cigna IT employees performed work highly similar, if not identical, in nature to the work performed by Plaintiff.

36.     Plaintiff's Agreement contained a non-compete clause prohibiting him from working for any of GalaxE's clients for a one year duration should the contract be terminated.

Such restrictive covenants are uncharacteristic for true independent contractors.  Moreover, Plaintiff's scheduled hours from 8:30 am to 5:30 pm, Monday through Friday, plus the additional after hours that his managers at Express Scripts/Cigna frequently required him to work late into the night, effectively prohibited Plaintiff from obtaining work elsewhere during his employment with Defendants.

37.     Plaintiff should have been classified as an employee of Express Scripts/Cigna pursuant to the Economic Realities Test under the FLSA, which considers the following six factors in determining whether independent contractors have been misclassified:  (i) the opportunity for profit or Loss Depending on Managerial Skill; (ii) Capital Investments: (iii) the Degree of Permanence of the Work Relationship; (iv) the Nature and Degree of the Worker's Control over the Work; (v) whether the Work Performed Is an Integral Part of the Business; and (vi)  whether the Work Performed Requires Special Skills and Initiative.

38.     The Opportunity for Profit or Loss Depending on Managerial Skill:  Plaintiff was an hourly paid worker and did not have an opportunity to earn profits or incur losses based on his exercise of initiative, business acumen, or judgment at Express Scripts/Cigna: (i) Plaintiff did not determine or meaningfully negotiate the charge or pay for the work provided.  Instead, he was paid an hourly rate of $55; (ii) Plaintiff did not have discretion to decide whether to accept or decline jobs from his supervisor.  Instead, he was required to perform, and regularly performed, the work assigned to him.  Plaintiff did not choose the order and/or time in which his assignments were performed as this too was decided by his supervisors; (iii) Plaintiff did not engage in marketing, advertising or other efforts to expand his business or secure more work while engaged by Express Scripts/Cigna; and (iv) Plaintiff did not have discretion to make decisions to hire others and purchase materials and equipment on behalf of Express Scripts/Cigna.

39.     The Opportunity To Make Capital Investments: Plaintiff was not asked to, and did not make, capital investments in Express Scripts/Cigna.

40.     The Degree of Permanence of the Work Relationship: From October 2020 until his termination in October 2023, Plaintiff's work for Express Scripts/Cigna was continuous with regularly scheduled hours from 8:30 a.m. to 5:30 p.m., Monday through Friday.  Moreover, his managers at Express Scripts/Cigna frequently required Plaintiff to work additional hours late into the night in order to support new releases and trouble shoot, and as a result, he thus was only able to work for Express Scripts/Cigna during this time.  Indeed, his regular scheduled hours, plus additional mandatory overtime work for which he was paid his standard hourly rate of $55 per hour, did not permit him to work for another company.

41.     The Nature and Degree of the Worker's Control over the Work: Express Scripts/Cigna exercised control over key aspects of Plaintiff's performance, including control over work assignments, setting Plaintiff's work schedule, supervising Plaintiff's work, and limiting Plaintiff's ability to work for others.  In addition, Express Scripts/Cigna required Plaintiff to fulfill comprehensive training requirements beyond training required by law, rule, or regulation.

42.     The Extent to Which the Work Performed Is an Integral Part of the Potential Employer's Business: Plaintiff performed data base administrative functions that were an integral, critical and necessary part of Express Scripts/Cigna's business operations.  Although the core business of Express Scripts/Cigna is managing pharmacy benefits, the business model is dependent on IT systems functioning properly in order to deliver these services.  Indeed, Plaintiff's supervisor at Express Scripts/Cigna, Gary Bischoff, wrote to Galaxe that Plaintiff was essential to the pharmacy migration to OnePA;

> Mohamed is a key member of the OnePA team and has supported the use of PostGres DB for the application since joining CRD on 10/5/2020. He is currently the primary individual supporting PostGres DB work for OnePA in both medical and pharmacy space. He has been engaged in the OnePA team since the inception and has become a leader for the use of PostGres. Losing him would create major issues for the team and take a minimum 8-12 weeks to get a replacement, which would put many initiatives at risk, including the pharmacy migration to OnePA.

43.    Whether the Work Performed Requires Special Skills and Initiative: While the work performed by Plaintiff required competency in data base administration,  Plaintiff did not make any independent judgments at Express Scripts/Cigna beyond the decisions necessary to do the work assigned by Express Scripts/Cigna.

**EXPRESS SCRIPTS/CIGNA ATTEMPTS TO HIRE PLAINTIFF**

44.    In January 2023, Gary Bischoff (Plaintiff's Senior Manager at Express Scripts/Cigna) submitted a formal request to convert Plaintiff from a contractor to a full-time employee of Cigna.

45.    However, GalaxE refused to consent to Plainitff being hired as an employee.

46.    Plaintiff was informed by GalaxE and/or Namtal that this refusal was pursuant to the contract terms with Express Scripts/Cigna and that GalaxE had a "certain limit per year" on conversions of contractors to full time employees of approximately 32 persons.

47.    Indeed, the Master Services Agreement between GalaxE and Express Scripts/Cigna contained a non-solicitation clause preventing Express Scripts/Cigna from hiring GalaxE's "consultants" without permission, effectively giving GalaxE veto power.

48.    At or around this time, Plaintiff told Dave Namtalov that he considered GalaxE's refusal to permit Express Scripts/Cigna to hire him as a full time employee to be "illegal," especially because at all times relevant he was functioning for Express Scripts/Cigna as a defacto employee.

49.     Pursuant to the Master Service Agreement and related documents, Express Scripts/Cigna paid GalaxE/Namtal $102.41 per hour for Plaintiff's services and GalaxE/Namtal paid Plaintiff only $55 per hour for his work for Express Scripts/Cigna.  It was not in GalaxE/Namtal's economic interest to abide by the law and recognize Plaintiff officially as what he already was:  a full time employee of Express Scripts/Cigna.

**Plaintiff Complains About Being Misclassified**

50.     In the Fall 2023, Plaintiff voiced his misclassification complaint internally to management.  Plaintiff had numerous conversations with several managers at Express Scripts/ Cigna, GalaxE and Namtal concerning his misclassification.

51.     On September 29, 2023, Plaintiff had a telephone call with his manager, Gary Bischoff, at Express Scripts/Cigna to complain that he believed he should be classified as an employee, not an independent contractor, and that he would like to resolve this matter internally, rather than having to file a complaint with the Department of Labor.  Mr. Bischoff thanked Plaintiff for bringing this matter to his attention and promised to escalate his complaint immediately to Ms. Ramandeep Kaur, who was the Senior Director, Express Scripts/Cigna.

52.     On October 6, 2023, Plaintiff had a telephone call with Malla Reddy Adaboina, the Director of Software Engineering at Express Scripts/Cigna, and informed him that he believed he should be classified as an employee, not an independent contractor.   Mr. Reddy Adaboina, who at this time had worked with Plaintiff for several years, acknowledged the seriousness of the issue and said he would discuss it with procurement and Cigna's vendor management.

53.     On October 9, 2023, Plaintiff had a telephone call with Mr. Reddy Adabooina and Ms. Ramandeep ("Raman") Kaur.  Plaintiff voiced his complaint that he believed he should be classified as an employee, rather than an independent contractor. Plaintiff shared the ABC test with

all supervisors and explained to them why he believed he should be classified as an employee. Ms. Kaur said she would speak with the procurement/vendors, GalaxE, and see what could be done. Notably, during this call Ms. Kaur also indicated that Express Scripts/Cigna was aware of friction with the vendor. She commented that Express Scripts/Cigna and GalaxE had been having issues and that Express Scripts/ Cigna was "fed up" with GalaxE's behavior.

54.    On October 11, 2023, Plaintiff had a telephone conversation with Tapan Gupta, the Director of Delivery at GalaxE. Plaintiff informed Tapan Gupta of the ABC test for determining employee versus independent contractor status in New Jersey (as well as in New York), the reasons why he believed his work at Express Scripts/Cigna satisfied this test, and that he should be classified as an employee. In response, Tapan Gupta threatened to terminate Plaintiff if he filed a complaint. Plaintiff reminded Tapan Gupta that retaliating against a worker because the worker inquired or complained about their status and classification is prohibited. Plaintiff said that he would prefer to resolve the situation internally and would prefer not have to involve the Department of Labor. Tapan Gupta warned Plaintiff that pursuing this issue would result in his termination. Mr. Gupta threatened that if Plaintiff involved the Department of Labor, it could "take another two or three years" for any outcome while Plaintiff would be out of a job in the meantime. Mr. Gupta told Plaintiff, in sum and substance, that "When things of this nature come about, the first thing they do is… terminate the contract." Mr. Gupta thus acknowledged that misclassified employees were terminated for complaining and that this type of retaliation was the Defendants' common and standard practice. Plaintiff told Mr. Gupta that retaliation for asserting one's rights is illegal.

55.     On October 11, 2023, Plaintiff also had a telephone conversation Dave Namtalov of Namtal and complained that he believed he should be an employee, not an independent contractor, and that he would like to resolve this issue internally and be made a full time employee. Plaintiff also said that he would have no choice but to file a complaint with the Department of Labor if the matter was not resolved internally.

56.     On October 16, 2023, Plaintiff had a telephone conversation with Greg, a Procurement Officer at Express Scripts/Cigna. Plaintiff informed him that he should be classified as an employee under the ABC test.  Greg told Plaintiff that he could speak as to why Plaintiff had not converted to a full-time employee, but that anything else was beyond his scope.

57.     On October 17, 2023, Plaintiff had a telephone conversation with Vikas Sirigundi, his Team Lead at Cigna.  Plaintiff informed Vikas Sirigundi that he had exhausted all options internally at Express Scripts/Cigna concerning his complaint of being misclassified as an independent contractor when he should be classified as an employee and that he would be submitting a complaint with the Department of Labor.  Plaintiff also told Mr. Sirigundi that he was taking some time off to work on the complaint.  Mr. Sirigundi said that he understood.

58.     On October 17, 2023, Plaintiff sent an email to key figures at GalaxE and Namtal (including GalaxE's COO Jim Dietrich, GalaxE's General Counsel Steve Weiss, GalaxE Vendor Manager Bryan Plegue, and Dave Namtalov) outlining his complaint. In this email (subject: "Request for Rate Adjustment and Overtime Reimbursement"), Plaintiff requested two things: (1) that his hourly rate be adjusted to $102.41/hour to match what Express Scripts/Cigna was paying GalaxE/Namtal for his services, effective immediately, and (2) that he be paid time and a half for approximately 352.5 hours of overtime which he had worked as a DBA for Express Scripts/Cigna. Plaintiff attached an Excel sheet to the email which calculated his overtime hours and a snapshot

from the Wand system (time tracking tool) showing the $102.41 rate paid to GalaxE/Namtal for Plaintiff's work.  In this email, Plaintiff cited the ABC test and showed how he had been misclassified as an independent contractor and that he met the test for an employee under New Jersey (and New York) law.

59.    On October 17, 2023, Namtal responded by email and refused to meet Plaintiff's demands or discuss the situation and *inter alia*, referenced the contract which stated Plaintiff was an "employee/consultant."  On October 18, 2023, Plaintiff responded, stating that simply because one is labeled a consultant does not determine the legal relationship and urged Namtal to review the New Jersey Department of Labor website and the ABC test for classification of employees versus independent contractors.

60.    On October 23, 2023, Plaintiff filed his misclassification complaint with the New Jersey Department of Labor.

61.    On October 24, 2023, the day after Plaintiff filed his misclassification complaint with the New Jersey Department of Labor, David Namtalov of Namtal called Plaintiff to terminate him.  Mr. Namtal told Plaintiff, in sum and substance, that "[**t**]**his [termination] is coming straight from Cigna- because of your unsubstantiated claims about being an employee**." Plaintiff informed Mr. Namtalov that he believed his termination was unlawful.  Mr. Namtalov responded, in sum and substance, that "**Cigna does not believe your claims about being an employee and that this is their decision.**"  When Plaintiff stated that his termination was unlawful retaliation, Mr. Namtalov said that **"It's not retaliation," and "you claim to be somebody that you're not. Cigna's legal department looked at it…".**

62.    At sometime after his termination, Plaintiff's misclassification complaint which he filed with the New Jersey Department of Labor was transferred to the New York Department of

Labor.  In 2024, the New York Department of Labor determined that Plaintiff was an employee and was entitled to unemployment benefits as a result of Express Scripts/Cigna terminating his employment.  Plaintiff thus received his unemployment benefits.

63.    Plaintiff has mitigated damages by searching for and obtaining subsequent employment in July 2024.  In his current position, he earns less than he earned during his employment with Defendants.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff sues on his own behalf and on behalf of a class of similarly situated individuals pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and/or 23(c)(4).

65.    Plaintiff brings this action on behalf of the following Class:

> All individuals who have worked as a DBA for Express Scripts/Cigna who were not provided with (a) overtime wages at time and a half for all hours worked in excess of 40 hours per week, and (b) employee benefits during the relevant statutory periods.

66.    The Class is so numerous that the joinder of all members is impracticable.  Although the precise size of the class is presently unknown to Plaintiff, this information is obtainable from Defendants' records.  It is estimated that the Class consists of more than 40 people.

67.    There are questions of law or fact common to the Class, which predominate over any questions affecting only individual Class members.  Among the principal common and predominating questions of law or fact, in this case, are the following:

a.    Whether Defendants misclassified Plaintiff and the other Class members as independent contractors;

b.    Whether Plaintiff and the other Class members were in fact employees of Express Scripts/Cigna.

14

c.  Whether Defendants retaliated against Plaintiff and other Class members who complained about being misclassified, not receiving overtime pay and/or benefits, or made other complaints about working conditions;

d.  Whether Defendant Express Scripts/Cigna failed to pay Plaintiff and other Class members overtime wages for all hours worked in excess of forty hours per week;

e.  Whether Defendant Express Scripts/Cigna denied Plaintiff and other Class members employee benefits to which they are or were entitled;

f.  Whether Defendant Express Scripts/Cigna was unjustly enriched as a result of misclassifying Plaintiff and the other Class members to the detriment of Plaintiff and the Class;

g.  Whether Defendants' conduct violates the law; and

h.  Whether Defendants are liable for damages.

68.  Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories. Moreover, there are no defenses available to Defendants that are unique to Plaintiff.

69.  Plaintiff will fairly and adequately protect the interests of the Class and is committed to vigorously pursuing this litigation. Further, Plaintiff has retained counsel who are highly experienced in handling class actions, particularly large complex class actions involving substantial sums of money and complicated legal and factual issues. Neither Plaintiff nor his counsel have any interests that conflict with or are antagonistic to those of the Class or which might cause them to not vigorously pursue this action.

70.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for the parties opposing any Class, as well as a risk of adjudication with respect to individual members, which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impede or impair their ability to protect their interests.

71.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class members in individually controlling the prosecution of separate claims against Defendants may be relatively small given the amount of the actual damages at issue for each Class member and the burdens on their time and resources, but which in the aggregate are estimated to involve a large sum. Management of the action as a class action is likely to present significantly fewer difficulties than those presented by the assertion of thousands of individual claims. The identities of Class members can be obtained from the Defendants' records.

72.     Plaintiff reserves the right to revise the class allegations and definition based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## FLSA COLLECTIVE ACTION ALLEGATIONS

73.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute his FLSA claims as a Collective Action on behalf of all individuals who during the relevant time period are or were working as DBAs for Express Scripts/Cigna and who did not receive overtime pay at time and a half for all hours worked in excess of 40 hours per week

74.     Defendants are liable under the FLSA for, *inter alia*, failing to pay overtime wages to Plaintiff and other DBAs at Express Scripts/Cigna.

75.     Defendants, moreover, are liable under the FLSA for unlawfully retaliating against Plaintiff and other Collective members who complained about misclassification and/or failure to receive overtime pay.

76.     There are many similarly situated current and former DBAs who, like Plaintiff, have not been paid proper overtime wages and/or who were unlawfully retaliated against in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

77.     The similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

78.     Plaintiff reserves the right to revise the Collective allegations and definition based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**COUNT ONE**
**MISCLASSIFICAITON AND FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE FLSA**

79.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

80.     Plaintiff brings this claim against all Defendants on behalf of himself and the Collective.

81.     Plaintiff worked for Express Scripts/Cigna as a DBA, but Plaintiff was not paid at time and a half for all hours worked in excess of 40 hours per week.  DBAs properly classified as employees, however, received overtime wages at time and a half from Express Scripts/Cigna.

82.     Defendants unlawfully misclassified Plaintiff and the other Collective members as independent contractors when, at all relevant times, they were employees of Express Scripts/Cigna, and failed to pay Plaintiff and the Collective at time and a half for all hours worked in excess of 40 hours per week.

## COUNT TWO
## RETALIATION IN VIOLATION OF THE FLSA

83.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

84.     Plaintiff brings this claim against all Defendants on behalf of himself and the Collective.

85.     Plaintiff complained to Defendants multiple times in September and October 2023 about being misclassified as an independent contractor and not receiving overtime wages.

86.     On October 11, 2023, Tapan Gupta, the Director of Delivery at GalaxE, told Plaintiff that it is standard operating procedure for Defendants to terminate persons who complain of being misclassified as independent contractors.   Thus, there are likely other members of the Collective who suffered retaliation, including termination, when they complained about misclassification and/or not receiving overtime pay.

87.     Defendants retaliated against Plaintiff in violation of the FLSA, 29 U.S.C. § 215(a)(3), by terminating him for making complaints, internally and externally to the Department of Labor, about being misclassified as an independent contractor and not receiving proper overtime pay.

## COUNT THREE
### MISCLASSIFICATION AND FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE NEW YORK LABOR LAW

88.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

89.     Plaintiff brings this claim against all Defendants on behalf of himself and the members of the Class who work or worked for Express Scripts/Cigna as a DBA in New York and who were not paid overtime wages at time and a half for all hours worked in excess of 40 hours per week.

90.     Plaintiff worked as a DBA for Express Scripts/Cigna and was misclassified as independent contractors, but functioned as employees.  Plaintiff was not paid time and a half for all hours worked in excess of 40 hours per week.  DBAs properly classified as employees, however, received overtime wages at time and a half from Express Scripts/Cigna.

91.     Defendants unlawfully misclassified Plaintiff and the other members of the Class as independent contractors, when at all relevant times they were employees of Express Scripts/Cigna, and failed to pay overtime wages at time and a half.

## COUNT FOUR
### RETALIATION IN VIOLATION OF THE NEW YORK LABOR LAW

92.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

93.     Plaintiff brings this claim against all Defendants on behalf of himself and the members of the Class who work or worked for Express Scripts/Cigna as a DBA in New York

94.     Plaintiff complained to Defendants that he had been misclassified as an independent contactor and that he was entitled to overtime pay at time and a half.

95.     On October 11, 2023, Tapan Gupta, the Director of Delivery at GalaxE, told Plaintiff that it is standard operating procedure for Defendants to terminate persons who complain of being misclassified as independent contractors.    There are likely other members of the Class who also suffered retaliation, including termination, for having complained about being misclassified and/or not receiving overtime pay.

96.     The New York Labor Law, Sections 215 and 740, protects employees from adverse employment action who reasonably believe the employer's practices are in violation of a law, rule, or regulation, and make a good faith effort to inform their employer of the violations prior to going public.

97.     Defendants retaliated against Plaintiff and other members of the Class who worked in New York for Express Scripts/Cigna as DBAs in violation of the New York Labor Law §§ 215 and 740 by terminating them for making complaints about being misclassified as an independent contractor and/or not receiving proper overtime pay.

**COUNT FIVE**
**VIOLATION OF NYLL § 191 FREQUENCY OF PAY**

98.     Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

99.     Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Class who worked as a DBA for Express Scripts/Cigna in New York.

100.     NYLL § 191 requires workers who are not manual laborers to be paid their earned wages semi-monthly, or every two weeks.

101.     Plaintiff and other members of the Class were not paid their earned hourly wages every two weeks or semi-monthly

102.    At times, Defendants failed to pay Plaintiff his earned hourly wages until two months after the work had been performed by Plaintiff.

103.    Plaintiff and the other members of the Class have suffered damages, including, but not limited to, the loss of the time value of money and interest earnings, as a result of Defendants' violations.

**COUNT SIX**
**UNLAWFUL MISCLASSIFICATION AND DENIAL OF ERISA BENEFITS**

104.     Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

105.    Plaintiff brings this claim against Defendant Express Scripts/Cigna on behalf of himself and the other members of the Class.

106.    Under the terms of Express Scripts/Cigna's employee welfare benefits plans, Plaintiff and the other Class members are or were entitled to be participants.

107.    Plaintiff and the other Class members are within the class of protected persons as defined by ERISA since they are or were a "participant" under such applicable definition.

108.    By reason of the intentional and wrongful conduct, Defendant Express Scripts/Cigna took specific actions on a continuing basis to discriminate against Plaintiff and other Class members for the purpose of interfering with their right to participate in and receive benefits under the respective plans.

109.    Defendant Express Scripts/Cigna intentionally and knowing misclassified Plaintiff and other Class members as independent contractors, when in fact they were employees, in order to cause them to be ineligible for participation in Express Scripts/Cigna's ERISA plans.

110.    Defendants acted with specific intent to interfere with the rights of Plaintiff and the other Class members to participation in, and receipt of benefits from, the Express Scripts/Cigna employee benefit plans.

111.    Plaintiff seeks relief pursuant to 29 U.S.C. § 1132(a)(1)(B), and further seeks all benefits that he and the Class are and/or were entitled to under Express Scripts' ERISA plans.

112.    In addition, Plaintiff seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## COUNT SEVEN
## UNLAWFUL INTERFERENCE WITH ATTAINMENT OF ERISA BENEFITS

113.    Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

114.    Plaintiff brings this claim against Defendant Express Scripts/Cigna on behalf of himself and the other members of the Class.

115.    Under the terms of Express Scripts/Cigna's employee welfare benefit plans, Plaintiff and other Class members are/were entitled to be participants.

116.    Plaintiff and the other Class members are within the class of protected persons and defined by ERISA since they are "participants" under such applicable definition.

117.    By reason of the intentional and wrongful conduct, Express Scripts/Cigna, on a continuing basis, took specific action to discriminate against Plaintiff and the other Class members for the purpose of interfering with their right to attain and participate in and receive benefits under the respective plans.

118.    Defendant Express Scripts/Cigna acted with specific intent to interfere with Plaintiff's and the other Class members' rights to plan participation and benefits.

119.    Defendant Express Scripts/Cigna thereby committed a continuing violation of 29 U.S.C. § 1140 and is liable for all losses that this continuing violation caused to Plaintiff and other members of the Class.

120.    In addition, Plaintiff seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

**COUNT EIGHT**
**VIOLATION OF ERISA FIDUCIARY DUTIES**

121.    Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

122.    Plaintiff brings this claim against Defendant Express Scripts/Cigna on behalf of himself and the other members of the Class.

123.    At all relevant times, Defendant Express Scripts/Cigna acted as either the statutory administrators, named fiduciaries or fiduciaries of the Express Scripts/Cigna employee welfare benefit plans. In these capacities, the conduct of Express Scripts/Cigna was governed by the strict fiduciary duties of 29 U.S.C. § 1104(a). These fiduciary duties include, but are not limited to, the duty to act solely in the interest of plan participants and beneficiaries, to act with upmost loyalty to them, to administer the plans in accordance with the written plan documents, to disclose truthful information about the plans and to identify and enroll all persons who are identified to participate in each plan.

124.    Defendant Express Scripts/Cigna violated their strict ERISA fiduciary duties on a continuing basis by, among other things:

a. Making misrepresentations to Plaintiff and the other Class members who were classified as independent contractors that they were not entitled to participate in employee welfare benefit plans when in fact they were entitled to participate;

b. Failing to distribute to Plaintiff and the other Class members documents related to the pension and employee welfare benefit plans which Plaintiff and the Class were entitled to receive under ERISA and by otherwise misleading and concealing from Plaintiff and the Class facts showing they were entitled to participate; and

c. Failing to review the facts applicable to the entitlement of Plaintiff and the other members of the Class under the employee welfare benefit plans and to correct or prevent the exclusion of Plaintiff and the Class from the plans.

125.    Defendant Express Scripts/Cigna's intentional and wrongful conduct harmed Plaintiff and the Class and therefore, Express Scripts/Cigna committed a continuing violation of 29 U.S.C. § 1104(a).

126.    Plaintiff and the Class seek all equitable relief available to them pursuant to 29 U.S.C. § 1132(a)(3).

127.    In addition, Plaintiff seeks to recover attorneys' fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g) and the statutory penalty pursuant to 29 U.S.C. § 1132(c)(3) based on Express Scripts/Cigna's failure to distribute plan materials as required by ERISA.

**COUNT NINE**
**CONDITIONAL CLAIM FOR RETROACTIVE BENEFITS UNDER ERISA PLAN**

128.    Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

129.    Plaintiff asserts and pursues this conditional count only if the Court determines that Plaintiff and the other members of the Class are entitled to obtain benefits under Express Scripts/Cigna's employee welfare benefit plans.

130.    Express Scripts/Cigna's employee welfare benefit plans are arrangements governed by ERISA.

131.    As a result of their employment with Express Scripts/Cigna, Plaintiff and the other members of the Class were eligible to receive benefits from Express Scripts/Cigna's employee welfare benefit plans.

132.    Express Scripts/Cigna's intentional and wrongful misclassification of Plaintiff and the other Class members as independent contractors had the effect of denying them benefits to which they otherwise would have been entitled to under the respective plans.

133.    Express Scripts/Cigna wrongfully informed Plaintiff and the other Class members that they were not entitled to receive benefits from the plans.  Express Scripts/Cigna thus violated their duties as administrators and fiduciaries of the plans.

134.    Express Scripts/Cigna never allowed Plaintiff and the other Class members to apply for benefits under the plans and the plans do not provide misclassified independent contractors any administrative procedures for challenging the denial of benefits under the plans. Thus, any attempt by Plaintiff and the other Class members to obtain relief by recourse of administrative procedures was futile.  Futility is further demonstrated by Defendant's continued practice of excluding Plaintiff and other Class members from participation throughout their employment.

135.    If it is found that Plaintiff and other Class members were entitled to recover actual benefits under these plans in which they never became participants due to their misclassification, then pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the other Class members are entitled to payment of all back benefits that were intentionally and wrongfully denied to them.

**COUNT TEN**
**UNJUST ENRICHMENT**

136.    Plaintiff repeats and realleges each and every allegation contained above as if set forth in full herein.

137.    Plaintiff brings this claim against Defendant Express Scripts/Cigna on behalf of himself and the other members of the Class.

138.    Throughout their years of employment with Defendants, Plaintiff and the other members of the Class conferred multiple benefits upon Defendant Express Scripts/Cigna, including loyal services and employment.

139.    Defendant Express Scripts/Cigna had expressed knowledge of the services rendered by Plaintiff and the Class and knowingly and willingly accepted and retained the benefits that resulted from their work.

140.    In fact, Defendant Express Scripts/Cigna had requested, directed and controlled the majority of the actions taken by Plaintiff and the Class in the performance of their services for Express Scripts/Cigna which led to the benefits Express Scripts/Cigna enjoyed.

141.    Defendant Express Scripts/Cigna intentionally and willfully misclassified Plaintiff and the other Class members as independent contractors throughout the term of their employment.

142.    Defendant Express Scripts/Cigna benefited in multiple ways by the services and misclassification of Plaintiff and the other Class members, including avoiding tax obligations that would have been incurred had Plaintiff and the Class been properly classified as employees and avoiding providing employee benefits such as retirement and health benefit plans and paid time off for sick leave and vacation.

143.    The circumstances are such that it would be wholly inequitable for Defendants to retain such benefits without paying Plaintiff and the other members of the Class for them.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.  Awarding Plaintiff, the Class, and Collective lost wages, including overtime pay at time and a half for all hours worked in excess of 40 hours per week, back pay and front pay;

B.  Awarding Plaintiff and the Class all benefits due under the Express Scripts/Cigna employee benefit plans;

C.  Awarding Plaintiff, the Class and Colelctive statutory penalties, liquidated damages and interest;

D.  Awarding Plaintiff all costs of this action and reasonable attorney's fees; and

E.  Granting Plaintiff such other relief as the Court deems appropriate and equitable, including injunctive and declaratory relief, such as reinstatement, as may be required in the interest of justice.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues as of right by jury.

Dated:  July 29, 2025
       New York, New York

GISKAN SOLOTAROFF & ANDERSON LLP

*/s/ Catherine E. Anderson*
By:     Catherine E. Anderson
        canderson@gslawny.com
        Giskan Solotaroff & Anderson LLP
        1 Rockefeller Plaza, 8th Floor
        New York, New York 10020
        Tel:  (212) 847-8315
        *Attorneys for Plaintiff*